IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALYCIA LANE                          :
                                     :          CIVIL ACTION
        v.                           :
                                     :          NO. 08-4849
CBS BROADCASTING INC.,               :
t/a KYW TV-3, et al.                 :

SURRICK, J.                                          APRIL __28__, 2009

## MEMORANDUM

Presently before the Court is Plaintiff's Motion to Remand. (Doc. No. 12.) For the

following reasons, Plaintiff's Motion will be granted.

## I.      BACKGROUND

This lawsuit arises out of the January 1, 2008 termination of Alycia Lane ("Plaintiff") as

a KYW TV news anchor following an incident in New York City in December 2007. We have

described the factual and procedural background of this litigation in several prior opinions

addressing the parties' removal disputes. *See Lane v. CBS Broad. Inc.,* No. 08-3175, Order

dated October 31, 2008; *Lane v. CBS Broad. Inc.*, No. 08-3175, 2008 U.S. Dist. LEXIS 65613

(E.D. Pa. Aug. 27, 2008); *Lane v. CBS Broad. Inc.*, No. 08-0777, 2008 U.S. Dist. LEXIS 26906

(E.D. Pa. Apr. 2, 2008). This opinion will pick up where the Memorandum and Order dated

August 27, 2008, denying Plaintiff's motion to remand, and the Order of October 31, 2008,

denying Defendants' motion to vacate Plaintiff's notice of dismissal in No. 08-3175, left off.

On September 23, 2008, Plaintiff filed a Complaint in the Philadelphia Court of Common

Pleas naming as defendants CBS Broadcasting Inc. t/a KYW TV ("CBS"), KYW TV president

Michael Colleran ("Colleran"), news anchor Lawrence Mendte ("Mendte"), Philadelphia Media

Holdings, LLC, Philadelphia Newspapers, LLC t/a Philadelphia Daily News, news columnist

Dan Gross ("Gross"), and John Doe and Jane Doe (collectively, "Defendants").[1]  Plaintiff's

Complaint contains eighteen state-law claims including:  defamation; false light; invasion of

privacy; tortious interference with prospective contractual relations; unlawful interception and

disclosure of electronic communications under 18 Pa. Cons. Stat. Ann. §§ 5703, 5725;

negligence; unlawful access to stored communications under 18 Pa. Cons. Stat. Ann. §§ 5741,

5747; intentional infliction of emotional distress; and civil conspiracy.  (*See generally* Compl.)

The Complaint incorporates by reference the factual averments and legal conclusions of three

federal criminal documents:  (1) the Information (Criminal No. 08-417) filed against Mendte on

July 21, 2008 ("Information"); (2) the Government's Plea Memorandum dated August 22, 2008

("Plea Memorandum"); and (3) the transcript of Mendte's guilty plea hearing held on August 22,

---

[1] On February 23, 2009, Philadelphia Newspapers, LLC – which provides the defense for
Philadelphia Media Holdings, LLC, and Dan Gross – filed a Suggestion of Bankruptcy advising
that it had filed for Chapter 11 bankruptcy on February 22, 2009.  (*See* Doc. No. 16.)  On March
5, 2009, Plaintiff filed a notice of dismissal without prejudice as to Philadelphia Newspapers.
(Doc. No. 17.)  "The general rule . . . is that all non-bankruptcy proceedings against a Chapter 11
petitioner are automatically stayed upon the filing of a Chapter 11 petition."  *Brock v. Morysville
Body Works, Inc.*, 829 F.2d 383, 387 (3d Cir. 1987).  However, courts permit otherwise proper
proceedings to continue against non-debtor co-defendants.  *See McCartney v. Integra Nat'l
Bank*, 106 F.3d 506, 509 (3d Cir. 1997) ("Although the scope of the automatic stay is broad, the
clear language of § 362(a) stays actions only against a 'debtor.'"); *see also Teachers Ins. &
Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) ("It is well-established that stays
pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants.");
*Marcus, Stowell & Beye Gov't Sec., Inc. v. Jefferson Inv. Corp.*, 797 F.2d 227, 230 n.4 (5th Cir.
1986) ("The well established rule is that an automatic stay of judicial proceedings against one
defendant does not apply to proceedings against co-defendants.").

We requested clarification from counsel regarding the effects of the bankruptcy
automatic stay on Philadelphia Media Holdings, LLC, and Dan Gross.  We were advised that on
April 14, 2009, Bankruptcy Judge Jean K. FitzSimon entered a Temporary Restraining Order
("TRO") that extended the automatic stay to include related entities and employees of
Philadelphia Newspapers, LLC.  The transcript of the TRO hearing held on April 6, 2009,
reveals that the Bankruptcy Court did not intend that the stay would act as an impediment to our
determination of jurisdiction.  The automatic stay and TRO will come into play after we have
determined jurisdiction.

2008, before United States District Judge Mary M. McLaughlin of the Eastern District of Pennsylvania ("Mendte Hr'g Tr.").

On October 10, 2008, Defendants filed a Notice of Removal, contending that Plaintiff's Complaint raised substantial issues of federal law that should be litigated in federal court. (Doc. No. 1.) In response, Plaintiff filed a Motion to Remand arguing that her Complaint set forth causes of action "created solely by Pennsylvania state tort common law and statutes." (Doc. No. 12 at 1.) Defendant responded that Plaintiff "has 'artfully pled' her Complaint to make it appear that claims based on federal law are not at issue, when in fact they are." (Doc. No. 14 at 2.)

## II.    LEGAL STANDARD

State-court actions that originally could have been filed in federal court may be removed to federal court. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (*citing* 28 U.S.C. § 1441).[2] However, a case removed to federal court shall be remanded to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction" over the claim. 28 U.S.C. § 1447(c) (2006). The removing party bears the burden of proving that federal subject matter jurisdiction exists. *Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). "The removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Id.* (internal quotation marks omitted).

---

[2] 28 U.S.C. § 1441(a) provides:

Except as otherwise expressly provided by an Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a) (2006).

3

Jurisdiction in a federal district court may be based upon either (1) a federal question under 28 U.S.C. § 1331 or (2) diversity under 28 U.S.C. § 1332.[3] The parties here are not diverse. Therefore, if federal jurisdiction exists, it must rest upon the existence of a federal question. *See* 28 U.S.C. § 1441(b) ("Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."). The federal question statute provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A case 'arises under' federal law within the meaning of § 1331 . . . if a 'well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Empire Healthcare Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006) (*quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983)).

"However, a well-established corollary to the well-pleaded complaint rule is the 'artful pleading doctrine,' under which 'a court will not allow a plaintiff to deny a defendant a federal forum when the plaintiff's complaint contains a federal claim artfully pled as a state law claim.'" *Thibodeau v. Comcast Corp.*, No. 05-1777, 2004 U.S. Dist. LEXIS 20999, at *9-10 (E.D. Pa. Oct. 21, 2004) (*quoting Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 311 n.5 (3d Cir. 1994)). "Removal is permitted under the artful pleading doctrine if '(1) federal law has

---

[3] The diversity jurisdiction provision states that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a).

completely preempted the state law that serves as the basis for the plaintiff's complaint, or (2) a federal question, not pleaded in the plaintiff's complaint, is nonetheless both intrinsic and central to the plaintiff's cause of action.'"[4] *Thibodeau*, 2004 U.S. Dist. LEXIS 20999, at *10 (*quoting Guckin v. Nagle*, 259 F. Supp. 2d 406, 410 (E.D. Pa. 2003)). Under the second category of cases, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986). Rather, the Supreme Court has "confined federal-question jurisdiction over state-law claims to those that really and substantially involve a dispute or controversy respecting the validity, construction or effect of federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005) (internal quotation marks and brackets omitted).

## III.   LEGAL ANALYSIS

### A.   *The* **Grable** *Case*

In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, the Supreme Court reaffirmed the doctrine that "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues," even in the absence of a federal cause of action.

---

[4] "Several circuits take the position that the artful pleading doctrine applies only in cases of complete federal preemption." 16 James Wm. Moore et al., Moore's Federal Practice § 107.14(3)(b)(iv) (3d ed. 2009). However, "[t]his would not appear to be necessarily accurate, in that the artful pleading rule could arise with regard to federal claims other than those involving the defense of federal preemption." *Id.* § 103.43.

Defendants address the artful pleading doctrine as an independent mode of removal, separate from their arguments concerning preemption or *Grable* jurisdiction. (Doc. No. 14 at 10.) Plaintiff argues that the artful pleading doctrine is not a separate removal doctrine. (Doc. No. 12 at 7 n.2.) "Courts have . . . generally concluded that 'artful pleading is not a separate removal doctrine, but rather refers to the manner in which some plaintiffs manage to plead claims that are actually federal . . . under state law." *Thibodeau*, 2004 U.S. Dist. LEXIS 20999, at *11 n.2.

545 U.S. at 312. The Court reasoned that this "doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id*. To determine whether a federal issue exists to support federal jurisdiction, *Grable* instructs that courts ask whether "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id*. at 314.

The litigation in *Grable* arose after the Internal Revenue Service ("IRS") seized real property belonging to Grable & Sons Metal Products, Inc. ("Grable"), in order to satisfy Grable's federal tax deficiency. *Id*. at 310. Darue Engineering & Manufacturing ("Darue") purchased the property from the IRS. *Id*. Five years later, Grable brought an action to quiet title in state court, claiming that the IRS had failed to satisfy the notice requirement in 26 U.S.C. § 6335 when it gave Grable notice by certified mail, rather than personal service. *Id*. at 311. It was undisputed, however, that Grable had received actual notice of the seizure before the sale of the property to Darue. *Id*. at 310. Darue removed the case to federal court on the basis of federal question jurisdiction. *Id*. at 311. The Supreme Court affirmed the lower court determinations that removal was proper, finding that "[w]hether Grable was given notice within the meaning of the federal statute is . . . an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case." *Id*. at 315. The Court concluded that "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court." *Id*.

In *Empire Healthchoice Assurance, Inc. v. McVeigh*, the Supreme Court again addressed the "special and small category" of cases exemplified by *Grable*. 547 U.S. at 699, 701. The dispute in *Empire* originated when Empire Healthchoice Assurance, Inc. ("Empire"), a private health insurance carrier that operated plans for federal employees pursuant to the Federal Employees Health Benefits Act of 1959 ("FEHBA"), 5 U.S.C. §§ 8901 *et seq.*, brought suit in federal court against a plan beneficiary's estate for reimbursement of medical costs paid by Empire. *Id*. at 683. The beneficiary's estate had recovered damages in state court from a third-party alleged to have caused the accident that injured the beneficiary. *Id.* Empire took no part in the state court litigation, but subsequently sought in federal court to recover the full amount that it had paid for the beneficiary's medical care, arguing that the beneficiary's estate was in breach of the reimbursement provision of the healthcare plan. *Id*. at 683, 688. The district court dismissed the action for lack of subject-matter jurisdiction, *id*. at 688, and the Supreme Court affirmed the dismissal, *id*. at 701. The Court found that federal law was not a necessary element of the health insurance carrier's reimbursement claim because "the reimbursement claim was triggered, not by the action of any federal department, agency, or service, but by the settlement of a personal-injury action launched in state court, and the bottom-line practical issue is the share of that settlement properly payable to Empire." *Id*. at 700 (citations omitted). The Court contrasted the "fact-bound and situation-specific" claim in *Empire* with the "nearly pure issue of law" presented in *Grable*. *Id*. at 700-01. Unlike in *Empire*, the Court said, in *Grable* "[t]he dispute . . . centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as 'substantial,' and its resolution was both dispositive of the case and would be controlling in numerous other cases." *Id*. at 700 (*citing Grable*, 545 U.S. at 313).

Accordingly, the Supreme Court found that Empire's claim did not fall into *Grable*'s "slim category" of "arising under" cases. *Id*. at 701.

In *Commonwealth of Pennsylvania v. Eli Lilly & Company, Inc.*, the district court addressed removal jurisdiction under *Grable* and *Empire*. 511 F. Supp. 2d 576 (E.D. Pa. 2007). A review of that decision is instructive. In *Eli Lilly*, the Commonwealth of Pennsylvania filed suit in state court against the defendant-pharmaceutical companies, asserting various Pennsylvania statutory and common law claims for the defendants' alleged submission of fraudulent claims for prescription medications. *Id*. at 578. The defendants removed the case to federal court as raising a substantial federal issue. *Id*. The defendants contended that resolution of the Commonwealth's claim that the defendants violated Pennsylvania law by submitting fraudulent claims under the Medicaid program depended upon the meaning of the phrase "medically accepted indication," which is defined by federal law. *Id*. at 581-82. The defendants also argued that resolution of the Commonwealth's deceptive marketing claims would require the construction and application of the Food Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301, *et seq.*, because the marketing of prescription drugs is extensively regulated by the FDA. *Id*. at 582. The district court disagreed and granted the Commonwealth's motion to remand. The court found that the complaint's use of the "medically accepted indication" standard did not justify removal because "liability under the state law claims . . . does not depend on the violation of any federal standard or statute." *Id*. at 581. The court explained that "it is not the act of causing the submission of a claim for a non-medically accepted indication that creates liability under the state law causes of action, but rather the act of causing the submission of a *false or fraudulent* claim." *Id*. at 582 (emphasis in original). The court further noted that "[t]here is no

8

liability asserted in the Complaint for mere failure to comply with federal law" and that "the allegations presented . . . do not turn on the interpretation of federal law." *Id*. Instead, like *Empire* and unlike *Grable*, the court found that the central disputes in *Eli Lilly* were factual. *Id*. The court concluded that "[w]here such claims are fact-specific and wholly based on state law, federal jurisdiction will neither further national uniformity, nor ensure the correct precedential interpretation of federal law." *Id*. at 587.

### 1.   *Necessary Federal Issue that is Actually Disputed*

The first requirement under *Grable* is that the state law claim necessarily raises a federal issue that is actually disputed. *Grable*, 545 U.S. at 314. As stated above, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 813. Similarly, "[t]he fact that a complaint mentions, or even incorporates a federal law, does not determine whether it 'arises under' the Constitution, laws or treaties of the United States." *Walker v. Family Med. Ctr. of Charleston*, No. 06-00634, 2007 U.S. Dist. LEXIS 3835, at *6 (S.D.W. Va. Jan. 18, 2007); *see also Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., LLC*, No. 06-4197, 2007 U.S. Dist. LEXIS 39214, at *9 (D.N.J. May 15, 2007) ("The Complaint does not 'necessarily raise' a federal question because it alleges predicate violations of both federal and state law."). Moreover, a federal issue may be unnecessary if the case could be decided without ever reaching the federal issue. *See Maciolek v. Maciolek*, No. 07-2510, 2008 U.S. Dist. LEXIS 3245, at *15 (E.D. Pa. Jan. 15, 2008) ("Because [the plaintiff] could be entitled to relief on the basis of state constitutional law alone, the Court would not need to reach the 'federal issue,' thus rendering determination of the 'federal issue' *unnecessary* to the adjudication of plaintiff's claims.") (emphasis in original);

*Fairfax*, 2007 U.S. Dist. LEXIS 39214, at *9 (finding that a complaint did not "necessarily raise" a federal issue when the plaintiffs could litigate and prevail upon their state-law claims "without any need to prove or establish a violation of federal law"). Furthermore, "[w]here a federal issue is present as only one of multiple theories that could support a particular claim . . . this is insufficient to create federal jurisdiction." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 807-09, 811-13 (1988)); *see also Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 153 (4th Cir. 1994) ("*Christianson* teaches us that, if a claim is supported not only by a theory establishing federal subject matter jurisdiction but also by an alternative theory which would not establish such jurisdiction, then federal subject matter jurisdiction does not exist." (citing *Christianson*, 486 U.S. at 810)); *Locus v. Duke Univ.*, No. 08-607, 2009 U.S. Dist. LEXIS 12764, at *14-15 (M.D.N.C. Feb. 19, 2009) ("[W]here a plaintiff's case can be supported with even one theory that does not call for an interpretation of federal law, his claim does not [necessarily] arise under federal law for purposes of § 1331.") (alterations in original, internal quotation marks omitted); *Walker*, 2007 U.S. Dist. LEXIS 3835, at *6 ("[I]f plaintiff's complaint is susceptible of two readings, the more appropriate interpretation is one that defers to the state tribunal.").

Plaintiff argues in her Motion to Remand that there is no "necessary" or "actually disputed" federal issue because "Plaintiff can prove each element of her claims without reference to federal law." (Doc. No. 12 at 17.) Plaintiff contends that she "does not ***need*** Mendte's conviction under Section 1030 to establish any cause of action. Regardless of whether Mendte was convicted, the Plaintiff can establish these claims by establishing that Mendte's ***conduct*** meets the elements of a violation of the state statutes." (*Id.* at 17 (emphasis in original).)

10

Accordingly, Plaintiff argues that "[b]ecause the Plaintiff does not premise her claim upon a construction of any federal statute, the meaning of a federal statute is not determinative of any issue in the case, and liability may proceed upon entirely non-federal grounds, there is no 'actually disputed' issue sufficient for subject matter jurisdiction [under] *Grable*." (*Id.* at 17-18.)

In their Response in Opposition to Plaintiff's Motion for Remand, Defendants contend that "there is a dispute over the application and interpretation of federal law, 18 U.S.C. § 1030, the federal statute which underlies most of the allegations in [Plaintiff's] Complaint." (Doc. No. 14 at 20.) Mendte entered a plea of guilty to violating 18 U.S.C. §§ 1030(a)(2)(C) and 1030(c)(2)(B)(ii). Section 1030(a)(2)(C) makes it a criminal offense to "intentionally access[] a computer without authorization . . . and thereby obtain[] . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). Section 1030(c)(2)(B)(ii) sets forth the punishment for an offense under subsection (a) where "the offense was committed in furtherance of any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 1030(c)(2)(B)(ii). In addition, § 1030(g) provides a civil remedy for victims of illegal wiretapping: "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). Defendants argue that "[Plaintiff] is asserting that a violation of [§ 1030] subsumes proof of the commission of the same intentional torts mentioned in the filings made by prosecutors in Mendte's criminal case solely because the language in § 1030(c)(2)(B)(ii) . . . requires conduct 'in furtherance' of a tort." (Doc. No. 14 at 21 (*citing* Compl., Ex. D at 6, 7 n.7).) Defendants "strenuously disagree[] that § 1030(c)(2)(B)(ii) could be interpreted as requiring the actual commission of a tort as an

element of the offense." (*Id.*)  Defendants also contend that Plaintiff's Complaint necessarily raises federal issues because it incorporates federal criminal documents, terms and elements of federal criminal law, and legal conclusions from Mendte's federal criminal case.  (*Id.*) Defendants conclude that  "[i]t is not just Mendte's conduct that [Plaintiff] wants to place before the state court, but also her interpretation of a federal law and her interpretation of what transpired in a federal court."  (*Id.* at 21-22.)

A review of the Complaint and its attachments reveals that, in at least one interpretation of Plaintiff's Complaint, Plaintiff does not rely upon § 1030's "in furtherance of" language. Instead, Plaintiff's Complaint focuses upon the facts laid-out in the Plea Memorandum and at the guilty plea hearing, and Mendte's admission that those facts were accurate.  (*See, e.g.*, Compl. ¶¶ 122-24.)  At Mendte's guilty plea hearing, the federal prosecutor set forth the factual basis for the charges.  (Mendte Hr'g Tr. 22-25.)  Mendte admitted that everything that the prosecutor stated was accurate and correct.  (*Id.* at 25-26.)  The Plea Memorandum notes that the conduct, set forth under the "Tortious Activity" section of the "Statement of Facts," constitutes the Pennsylvania torts of Intentional Interference with Prospective Contractual Relations, Publicity Given to Private Life, and Intrusion upon Seclusion.  (Plea Mem. at 6 & n.7.)  Mendte admitted at the guilty plea hearing that the Statement of Facts in the Plea Memorandum was accurate and correct.  (Mendte Hr'g Tr. 26.)  In Count III of the Complaint, Plaintiff concludes that "as a direct result of Mendte's conduct described by the United States Attorney, Mendte intentionally intruded upon the Plaintiff's solitude and seclusion of her private affairs or concerns, and the intrusion was both substantial and highly offensive to a reasonable person."  (Compl. ¶ 127.)

We do not understand Plaintiff to be asserting that because Mendte entered a plea of

guilty to offenses charged under § 1030 he is automatically liable for having committed state torts. Rather, we read Plaintiff's Complaint as stating that Mendte is guilty of committing state torts because Mendte admitted to certain conduct that satisfies the elements of those torts, and that, in addition, Mendte admitted that said conduct constituted tortious acts under Pennsylvania law. We view Plaintiff's primary allegation to be that the facts and conduct that Mendte has admitted to be true satisfy the elements of the torts claimed in her Complaint. The fact that Mendte admitted to such conduct in the context of pleading guilty to § 1030 offenses in federal court is of no consequence. Since Mendte's conduct clearly violates § 1030, Plaintiff could certainly pursue civil remedies under § 1030(g). However, Plaintiff is not required to do so. Having chosen to seek relief under state law, the fact that Plaintiff could also proceed under federal law does not make that federal law actually disputed or necessary to the case.

### 2.    *"Substantial" Federal Issue*

"[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313. "[I]t takes more than a federal element to open the 'arising under' door." *Empire*, 547 U.S. at 701 (*quoting Grable*, 545 U.S. at 313) (internal quotation marks omitted).

Plaintiff contends that in addition to there being no necessary or actually disputed federal issue, no federal issue is "substantial" under *Grable*. (Doc. No. 12 at 21.) Plaintiff argues that because she can prove her claim based upon Mendte's conduct, there is no "pure issue of law" and no dispositive federal issue. (*Id.* at 21-22 (*citing Empire*, 547 U.S. at 700).) In addition, Plaintiff argues that there is no indication that Congress intended to confer federal jurisdiction

over state-law cases involving issues of § 1030 and that, even though § 1030 provides for a private cause of action, there is no indication that federal courts are to be the exclusive venue for such civil actions.[5]  (*Id.* at 22-23.)

Defendants argue in response that there are disputed issues of federal law that are substantial because they are dispositive of Plaintiff's claims.  (Doc. No. 14 at 22.)  Defendants argue that because of the way that Plaintiff has pled several of her claims, interpretation of § 1030 will be necessary.  (*Id.*)  They contend that Plaintiff cannot prevail on her state tort claims unless she is correct that "the elements of a violation of § 1030 include the commission of certain state law intentional torts."[6]  (*Id.*)  We disagree.  We find that Plaintiff's Complaint does

---

[5]  Section 1030(g) provides in full:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware.

18 U.S.C. § 1030(g).

[6]  Defendants also argue that "it has been recognized that when a claim is based upon proceedings in a federal court, the federal issues involved are necessarily 'substantial' for this purpose."  (Doc. No. 14 at 23 (*citing U.S. Express Lines, Ltd. v. Higgins*, No. 99-992, 1999 U.S. Dist. LEXIS 12920, at *7 (E.D. Pa. Aug. 13, 1999)).)  Defendants cite the district court opinion in *U.S. Express Lines, Ltd. v. Higgins* for this proposition.  (*Id.*)  The district court in *U.S. Express Lines* found the federal element of the plaintiffs' state law claims to be substantial "because the alleged unlawful issuance of [writs of attachment] occurred in the context of federal actions and were ordered by a federal district court judge."  1999 U.S. Dist. LEXIS 12920, at *7. The case dealt with a claim by the plaintiffs that the defendant-attorneys had committed

not contain federal elements that are dispositive of this case. Plaintiff's Complaint focuses upon the conduct that underlies Mendte's guilty plea and does not rely upon an interpretation of federal law. Even if Defendants were correct that several of Plaintiff's claims rely upon a particular interpretation of the language in § 1030, Plaintiff can still prevail on her claims if she simply proves that the conduct alleged in the Complaint satisfies the elements of the stated torts. Plaintiff need only rely on the facts that Mendte admitted during the guilty plea colloquy to establish the state torts that she claims Mendte committed. To the extent that a federal issue may exist in Plaintiff's Complaint, it is not substantial. *Cf. Koresko v. Murphy*, 464 F. Supp. 2d 463, 469 (E.D. Pa. 2006) (finding that the "outcome-determinative nature" of the federal issue in the plaintiff's state-law claims makes it "actually disputed and substantial").

As an alternative argument that Plaintiff raises "substantial" federal questions, Defendants offer the possibility that the state law claims may be preempted by federal law. (Doc. No. 14 at 27.) This argument fails, however, because federal preemption is a defense and

---

malicious abuse of civil process under state law when they sought writs of attachment in federal district court and cited as governing law an Eleventh Circuit opinion, rather than the Supplemental Rules for Admiralty Claims. *See U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 386-87 (3d Cir. 2002). The Third Circuit heard the case on appeal to resolve the question of whether "the conflict between the procedural rule and the opinion of a United States Court of Appeals raises a federal question sufficient to support removal of the malicious abuse of process claim from the state court to the federal forum." *Id.* at 386. The Third Circuit affirmed the district court's decision to deny the plaintiffs' motion to remand. *Id.* However, the Third Circuit did not focus upon the federal court context of the issuance of the writ of attachments. Rather, the court found that "the federal question at the heart of this litigation is the applicability and construction of Supplemental Rule B." *Id.* at 390. The court stated that the plaintiffs "alleged a substantial question of federal law involving an apparent clash between a procedural rule and a contrary holding by a United States Court of Appeals." *Id.* at 391. The court found this federal issue to be dispositive of the case because, were the court to decide that the Eleventh Circuit opinion was the correct statement of law, "the plaintiffs' case could be dismissed on that basis alone." *Id.* at 391 n.3. Accordingly, we do not agree with Defendants' conclusion that claims based upon proceedings in federal court are necessarily "substantial."

does not constitute a substantial issue of federal law for "arising under" purposes. *See, e.g.*, *Pinney v. Nokia, Inc.*, 402 F.3d 430, 446 (4th Cir. 2005) ("The lurking question of federal law is . . . the affirmative defense of preemption, but that does not make the [state law] claims into ones arising under federal law."); *Williams v. Viva Health, Inc.*, No. 07-321, 2008 U.S. Dist. LEXIS 5639, at *21 (M.D. Ala. Jan. 25, 2008) (finding that the defendant's preemption defenses do not constitute substantial issues of federal law under *Grable*); *Kuntz v. Ill. Cent. R.R. Co.*, 469 F. Supp. 2d 586, 598 (S.D. Ill. 2007) ("[A] finding that this case presents a substantial federal question merely on the basis of [the defendant's] preemption defense would be manifestly contrary to the well-pleaded complaint rule.").

### 3. *Federalism and Comity*

A "federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable*, 545 U.S. at 313-14. "Because arising-under jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress . . . there must always be an assessment of any disruptive portent in exercising federal jurisdiction." *Id*. at 314.

Plaintiff argues that there is no benefit to having this case heard in federal court because there is no issue of interpreting or constructing a federal statute and because the issues in this case are fact-specific. (Doc. No. 12 at 25.) In contrast, Defendants argue that this case should be heard in a federal forum because there is a federal statute at issue and because federal law will have to be referenced and applied when interpreting Plaintiff's claims, especially the state statutes modeled on federal statutes. (Doc. No. 14 at 22, 27, 28-29.)

As discussed above, to the extent that Plaintiff submits a disputed interpretation of federal law as part of her Complaint, it is only one of several alternative theories in support of her claims. That is, even if Plaintiff's Complaint can be construed as basing liability for the state torts on Mendte having pled guilty to committing those torts – as opposed to Defendants interpretation that he merely pled guilty to acting "in furtherance of" those torts – federal-question jurisdiction still would not lie because the Complaint *also* bases liability on Mendte's conduct and admission to that conduct. Accordingly, any disputed federal law that Defendants identify cannot serve as the basis for federal-question jurisdiction since it is not dispositive of the claims. Plaintiff's claims involve allegations of conduct to which Mendte has admitted, and arguments that said conduct satisfies the elements of various state torts and statutes. Such a fact-specific dispute based on state law does not have a place in federal court where there is no diversity of citizenship. *See Eli Lilly*, 511 F. Supp. 2d at 587 (finding that where state law claims that "invoke a federal standard or stand against the backdrop of a federal regulatory scheme . . . are fact-specific and wholly based on state law, federal jurisdiction will neither further national uniformity, nor ensure the correct precedential interpretation of federal law"). Finally, even if some reference to federal law is necessary in the course of adjudicating this matter, state courts are "competent to apply federal law." *See Empire*, 547 U.S. at 701.

We are satisfied that the state-law claims in Plaintiff's Complaint do not necessarily raise federal issues that are actually disputed and substantial. Exercising federal jurisdiction in this case would ignore the *Grable*'s instruction that only substantial federal questions should open the door to federal court. Moreover, permitting the peripheral federal elements – which at best serve as alternative theories of liability – in this case to support removal jurisdiction would

violate the doctrine that district courts must resolve jurisdictional questions in favor of remand. Therefore, federal-question jurisdiction under *Grable* is not appropriate in this case.

### B.    Preemption[7]

In addition to arguing that Plaintiff's Complaint raises a federal question under *Grable*, Defendants argue that Plaintiff's state law claims may be preempted "altogether, to the extent [that] they encompass conduct regulated by the federal Wiretap Act and the SCA." (Doc. No. 14 at 27.)  Plaintiff contends that "there is no area of law at issue in this case that is subject to complete preemption.  Thus, this Court has no subject matter jurisdiction due to 'complete preemption.'" (Doc. No. 12 at 8 n.3.)

The Supreme Court has recognized three types of preemption:  express preemption, field or complete preemption, and implied conflict preemption.  *See Fellner v. Tri-Union Seafoods, LLC*, 539 F.3d 237, 242-43 (3d Cir. 2008).  Of the three types of preemption, only complete

---

[7] It is not entirely clear whether Defendants are arguing preemption as a separate basis of removal or whether they are merely submitting preemption arguments as evidence that Plaintiff's claims raise substantial issues of federal law.  Defendants never actually assert that Plaintiff's claims are preempted.  Rather, Defendants state that there is a "possible preemption" issue with Plaintiff's state law claims (Doc. No. 14 at 27) and that Plaintiff's claims "may very well be preempted under federal law" (*id*. at 29).  Defendants advise that they "intend to raise preemption arguments at greater length in their motion to dismiss, if this Court retains jurisdiction over this case." (*Id*. at 28 n.10.)

Moreover, Defendants never identify what type of preemption they are referring to specifically.  Defendants list the three types of preemption in a footnote (*id*. at 28 n.10), but otherwise state only that Plaintiff's claims may be "preempted entirely" (*id*. at 24) or "altogether" (*id*. at 27).  Although such language suggests that Defendants are contemplating complete preemption, Defendants cite cases that discuss all three types of preemption, but that mostly discuss express preemption.

Defendants do not appear to be raising the preemption issue as an independent basis for removal.  For example, Defendants begin their discussion of preemption by asserting that the "possible preemption" of Plaintiff's state law claims is another issue that "may . . . implicate substantial questions of federal law." (Doc. No. 14 at 27.)  Nevertheless, in an abundance of caution, we will address complete preemption separately.

18

preemption confers federal question jurisdiction. *See, e.g.*, *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 398 n.4 (3d Cir. 2004) ("[A]n action . . . where federal jurisdiction is not presented on the face of the plaintiff complaint . . . may be removed if it falls within the narrow class of cases to which the doctrine of complete pre-emption applies." (internal quotation marks omitted)); *Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001) ("[C]onflict preemption is merely a defense to the merits of a claim. As such, according to the well-pleaded complaint rule, it does not provide a basis for federal question jurisdiction."); *Thibodeau*, 2004 U.S. Dist. LEXIS 20999, at *15 (finding that express preemption serves as a defense, but does not confer removal jurisdiction).

Complete or field preemption arises when "Congress'[s] intent to pre-empt all state law in a particular area may be inferred [because] the scheme of federal regulation is sufficiently comprehensive or the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Fellner*, 539 F.3d at 242-43 (internal quotation marks omitted). Complete preemption is applicable when "Congress has left no room for state regulation of these matters." *United States v. Locke*, 529 U.S. 89, 111 (2000). "'[T]he purpose of Congress is the ultimate touchstone in every pre-emption case.'" *Wyeth v. Levine*, 173 L. Ed. 2d 51, 60 (2009) (*quoting Medtronic Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). In all preemption cases, courts "'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Wyeth*, 173 L. Ed. 2d at 60 (*quoting Medtronic*, 518 U.S. at 485). Furthermore, "[w]hen faced with two equally plausible readings of statutory text, we 'have a duty to accept the reading that disfavors preemption.'" *Bruesewitz v. Wyeth*, No. 07-3794, 2009 U.S. App. LEXIS

6410, at *17 (3d Cir. Mar. 27, 2009) (not precedential) (*quoting Bates v. Dow AgroSciences*, 544

U.S. 431, 449 (2005)). "'The case for federal pre-emption is particularly weak where Congress

has indicated its awareness of the operation of state law in a field of federal interest, and has

nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between

them.'" *Wyeth*, 173 L. Ed. 2d at 66 (*quoting Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489

U.S. 141, 166-67 (1989)).

 The conduct at issue in this case is governed at a federal level by the Wiretap Act, 18

U.S.C. §§ 2510 *et seq*., and the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701 *et seq*.

Both statutes were enacted as part of the Electronic Communications Privacy Act of 1986

("ECPA"), Pub L. No. 99-508, 100 Stat. 1848 (1986). "The Wiretap Act protects against

unauthorized 'interception' of 'electronic communications.'" *Fraser v. Nationwide Mut. Ins.*

*Co.*, 135 F. Supp. 2d 623, 633 (E.D. Pa. 2001) (*quoting* 18 U.S.C. § 2511). "The [SCA] protects

against unauthorized 'access' to 'electronic communication while it is in electronic storage.'"

*Id*. at 633 (*citing* 18 U.S.C. § 2701). Both the Wiretap Act and the SCA provide for private civil

remedies for violations of the respective acts. 18 U.S.C. §§ 2520, 2707. The Pennsylvania

counterpart to the Wiretap Act is codified at 18 Pa. Cons. Stat. Ann. §§ 5701, *et seq*., while the

SCA's Pennsylvania state counterpart can be found at 18 Pa. Cons. Stat. Ann. §§ 5741, *et seq*.

 As evidence that Congress intended the ECPA to preempt state law, Defendants point to

a 1986 Senate Report concerning the enactment of the ECPA. (Doc. No. 14 at 24.) The Report

states, in part:

> [T]he provisions of chapter 119 of title 18 supersede state laws with respect to
> electronic communications. Under chapter 119, the states must enact statutes which
> are at least as restrictive as the provisions of chapter 119 before they can authorize
> their state courts to issue interception orders. Because of the substantial changes

> made by this act it is appropriate to grant the states sufficient time to modify their laws. This special effective date rule gives the states two years to amend their laws to meet the new requirements of chapter 119.

S. Rep. No. 99-541, at 35 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3589.  Two years later, Pennsylvania enacted its nearly identical counterpart statutes.  The Senate Report appears to demonstrate that, rather than leaving no room for supplementary state regulation, *see Locke*, 529 U.S. at 111, Congress expressly authorized states to legislate in this field.  Congress apparently wanted to ensure that states meet base-line standards, however, and thus federal law supersedes to the extent that state laws offer less protection than their federal counterparts.  In the absence of any other indication that Congress intended to preempt the entire field at issue in this case, and keeping in mind the rarity with which complete preemption applies, we decline to find that complete preemption applies in this matter.  *See also Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, No. 07-1029, 2008 U.S. Dist. LEXIS 33463, at *14 (W.D. Pa. Apr. 23, 2008) (finding that the plaintiff's state law claims were not subject to field preemption under the SCA because "[n]either the language of the SCA itself nor the Congressional record demonstrate an intent to regulate the entire field governing the disclosure of stored communications").  Accordingly, to the extent that Defendants can be understood to have argued that the Wiretap Act and the SCA completely preempt Plaintiff's state law claims, we reject that argument.

### C.     Attorney's Fees and Costs

As a final matter, Plaintiff argues in her Motion to Remand that the Court should award attorney's fees and costs to Plaintiff under 28 U.S.C. § 1447.  (Doc. No. 12 at 27.)  Section 1447 provides, in pertinent part, that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C.

§ 1447(c). Plaintiff argues that "[Defendants] did not have, and could not have had, any objectively reasonable basis for the removal of the Plaintiff's state court action." (Doc. No. 12 at 27.) Defendants have not addressed this issue.

We will not award attorney's fees and costs. The litigation between these parties has been back and forth between the federal court and the state court several times. Even the briefest glance at the procedural history demonstrates clearly that Defendants are determined to have this matter heard in federal court, and that Plaintiff is equally determined to pursue this action at the state level. Thus far, each side has taken every opportunity to try to maneuver this action into its respective forum of choice. Fully aware of this context, Plaintiff drafted a complaint that liberally referenced federal criminal proceedings and that incorporated federal criminal documents governed, of course, by federal law. It is hardly surprising that Defendants took advantage of this apparent infusion of federal law to argue that legal precedent supports removal to the federal court. Under all of the circumstances, the fact that we have rejected Defendants' legal arguments does not justify the award of attorney's fees.

## IV. CONCLUSION

For all of these reasons, Plaintiff's Motion will be granted and this case will be remanded to the Philadelphia Court of Common Pleas.

An appropriate Order will follow.

BY THE COURT:


**_/s/ R. Barclay Surrick_**,
U.S. District Court Judge